UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:12-cr-00102-TWP-DML-48 |
| ) | |
| FRANK JORDAN (48), ) | |
| ) | |
| Defendant. ) | |

### ENTRY DENYING RENEWED
### MOTION FOR JUDGMENT OF ACQUITTAL

This matter is before the Court on Defendant Frank Jordan's ("Jordan") renewed Motion for Judgment of Acquittal (Dkt. 2495) under Federal Rule of Criminal Procedure 29. This matter was tried to a jury on November 4, 2013 to November 6, 2013. At the close of the Government's case, Jordan orally moved for judgment of acquittal, which the Court denied. On November 6, 2013, the jury returned a verdict of guilty to one count of Conspiracy to Distribute Cocaine in an amount greater than 500 grams in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(B)(ii), and 846, and one count of Unlawful Use of a Communication Facility in Connection with a Drug Offense in violation of 21 U.S.C. § 843(b). After the verdict was read, Jordan renewed his motion for judgment of acquittal and sought an extension to renew the motion in writing, which was later granted. Jordan timely filed his renewed written motion, which the Court now considers. Finding the evidence sufficient that a rational jury could find Jordan guilty beyond a reasonable doubt, Jordan's motion is **DENIED**.

### I. BACKGROUND

Jordan is Defendant No. 48 in a multi-count RICO case involving 50 other defendants, of which many were members of the Outlaws Motorcycle Club ("the Outlaws"). Jordan was not

alleged to be an Outlaw, but instead was implicated in a conspiracy for selling narcotics to members of the Outlaw Motorcycle Club. Specifically, Jordan was charged in a Second Superseding Indictment with Count 16, Conspiracy to Distribute Cocaine and Count 41, Unlawful Use of Communication Facility in Connection with a Drug Offense. Jordan's case was severed from his co-defendants and on November 4, 2013 he proceeded to trial. At trial, the Government presented evidence that drug deals were routinely conducted in the restrooms and parking lot of Sidewinders Bar ("Sidewinders") in Indianapolis, Indiana. Hector Nava-Arrendondo ("Nava"), a cooperating witness, testified that he received cocaine from Jose Diaz ("Diaz") during the fall of 2010 until his arrest in April 2012. Nava identified Abraham Flores ("Flores") and James Stonebraker ("Stonebraker") as his cocaine customers. Nava also testified that he distributed cocaine to Jordan, the bouncer at Sidewinders. Nava testified that he delivered cocaine to Jordan on a regular basis for a six month period and that Jordan would contact him by telephone and indicate that he needed cocaine for one of his customers. Nava would then deliver the cocaine to Jordan, usually at Sidewinders. Nava sometimes received cash for the cocaine and sometimes 'fronted' the cocaine to Jordan. Following a three day trial, a jury convicted Jordan of both counts. As stated above, the matter is before the Court on Jordan's renewed motion for judgment of acquittal.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 29 permits the court, upon motion of defendant, to enter a "judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Federal Rule of Criminal Procedure 29(b)(2) allows the Court to enter an acquittal after the jury has returned a verdict of guilty. When deciding a motion for judgment of acquittal, courts view the "evidence in the light most favorable to the government" and ask whether "any

2

rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *United States v. Philpot*, 733 F.3d 734, 742 (7th Cir. 2013).

## III. <u>DISCUSSION</u>

Jordan contends that no rational jury could have found that he was part of a conspiracy to distribute 500 grams of cocaine. Rather, he asserts that he was part of a buyer-seller relationship and there was insufficient evidence to prove a conspiracy. A conspiracy is distinct from an underlying crime—here, the distribution of drugs, a crime with which Jordan was not charged—and "is the extra act of *agreeing* to commit a crime." *United States v. Brown*, 726 F.3d 993, 997 (7th Cir. 2013) (emphasis in original). The crime of conspiracy requires that "(1) two or more people agreed to commit an unlawful act; and (2) the defendant knowingly and intentionally joined in the agreement." *United States v. Claybrooks*, 729 F.3d 699, 704 (7th Cir. 2013). For a drug-distribution conspiracy, the Government must prove "that the defendant knowingly agreed—either implicitly or explicitly—with someone else to distribute drugs." *Id.* (quoting *United States v. Johnson*, 592 F.3d 749, 754 (7th Cir. 2010)).

There is an important distinction in drug distribution conspiracies, elucidated upon recently by the Seventh Circuit in *United States v. Brown*. In *Brown*, the Seventh Circuit reiterated that:

> A drug sale itself is an agreement: a buyer and seller come together, agree on terms, and exchange money or commodities at the settled rate. But although the substantive trafficking crime is an agreement, it cannot also count as the agreement needed to find conspiracy. Rather, conspiracy to traffic drugs requires an agreement to *further* distribution. For example, the buyer could agree to resell the drugs at the retail level.
>
> . . . . Mere knowledge of further illegal use, for example, may make the seller an aider and abettor to further drug crimes committed by the buyer but not a co-conspirator. Being a co-conspirator requires more. As the Supreme Court aptly put it: a co-conspirator has 'a stake in the venture' and therefore exhibits 'informed and interested cooperation.'

3

726 F.3d at 998 (internal citations omitted) (emphasis in original).

The Government relies on *United States v. Avila*, 557 F.3d 809 (7th Cir. 2009) and *United States v. Lechuga*, 994 F.2d 346 (7th Cir. 1993). In *Avila*, the Seventh Circuit stated, "[a]ll that is necessary to establish a drug conspiracy is an understanding related to the subsequent distribution of narcotics. The government need only show an agreement that goes beyond the *individual* sale between buyer and seller." 557 F.3d at 816 (internal citation omitted) (emphasis in original). In *Lechuga*, it was sufficient evidence that the defendant sold drugs with the understanding that the buyer would be reselling the drugs, as contrasted with a "spot seller unaware of what activities [the buyer], or any subsequent occupier of a place in the chain of distribution, might undertake." 994 F.2d at 350–51. In both *Avila* and *Lechuga*, factors the court considered to determine whether a conspiracy existed were: "sales of large amounts of drugs, prolonged cooperation, a level of mutual trust between the parties, standardized dealings, and sales on a consignment or 'fronted' basis." *Avila*, 557 F.3d at 816; *see also Lechuga*, 994 F.2d at 350. But in *Brown*, the Seventh Circuit expressed that it had recently become "concerned with that approach." 726 F.3d at 999. It recognized that "most of the factors did not actually distinguish conspiracies from buyer-seller relationships." *Id.* Noting the difficulties of drawing a line between a mere buyer-seller relationship and a conspiracy, the court set forth the following non-exhaustive list of circumstantial "considerations" that may be taken into account:

> sales on credit or consignment, an agreement to look for other customers, a payment of commission on sales, an indication that one party advised the other on the conduct of the other's business, or an agreement to warn of future threats to each other's business stemming from competitors or law-enforcement authorities.

*Id.* at 999. Ultimately, the court announced that when evaluating the sufficiency of the government's circumstantial proof of a conspiracy, courts are to "consider the totality of the

4

circumstances . . . tak[ing] into account all the evidence surrounding the alleged conspiracy and mak[ing] a holistic assessment" of whether the evidence could support the verdict. *Id.* at 1002. The list of considerations is the starting point for an analysis. The *Brown* court further acknowledged that some evidence, when combined, supports a direct inference of conspiracy. For example, "either a consignment arrangement or a relationship exhibiting all three [*United States v. Johnson*, 529 F.3d 749 (7th Cir. 2010)] factors—multiple, large-quantity purchases, on credit—are widely accepted as sufficient proof of a trafficking conspiracy." *Id.*

With the totality of the circumstances approach directing the Court's analysis, the Court now turns to the evidence presented at trial.

- Stonebraker testified that Nava introduced him to Jordan, and Stonebraker was told that Jordan bought cocaine from Nava and Flores. Tr. at 215, 218.
- Stonebraker testified that he observed Jordan selling cocaine in the bathroom and parking lot at Sidewinders. Tr. at 216.
- Stonebraker testified that he observed Jordan buying cocaine from Flores. Tr. at 219.
- Stonebraker testified that Nava told him he could go to Flores or Jordan to buy cocaine. Tr. at 228.
- Nava testified that he provided Jordan with cocaine for approximately six months, Tr. at 381, and he knew Jordan would be reselling the cocaine to customers of Jordan's. Tr. at 384.
- Nava testified that he had an agreement to deliver drugs to Jordan, and under that agreement Jordan would resell the drugs to his customers. Tr. at 389–90; Tr. at 395.
- Nava's testimony also showed that Flores received drugs from Mr. Nava on credit then passed those drugs to Jordan on credit. Tr. at 400–02.

5

- Nava testified that on occasion, Flores would not sell all of his drugs and would give them to Jordan to sell for him. Tr. at 402.

- Nava testified that both he and Flores were Jordan's supplier. Tr. at 403.

- Nava testified that he gave Jordan cocaine on credit—fronted it—two or three times. Once it was 3.5 grams, the other times it was $60.00 worth, and Jordan paid Nava back. Tr. at 430.

- Nava said he sometimes gave Jordan money, "like $20.00", or some drugs. Tr. at 433.

- Nava did not see Jordan's customers and did not tell Jordan who his supplier was. Tr. at 433–34.

- Nava testified that he did not select Jordan's customers nor set a resale price. He only told Jordan what he charged. Nava stated, "I didn't know what he would do with it afterwards. I just wanted my part of the money—my money." Tr. at 434.

Jordan argues that under the standard in *Brown*, the evidence does not support a guilty verdict. The Court disagrees. Here, the Government succeeded in presenting "some evidence" indicating conspiracy. *See Brown*, 726 F.3d at 1000 (stating that "once the government has shown some evidence that can distinguish a conspiracy from a buyer-seller relationship (i.e. something akin to those examples found in our new list), then other circumstantial evidence can bolster that argument, including evidence that would not itself, distinguish a conspiracy."). First, the evidence shows that on two or three occasions, Nava 'fronted' cocaine to Jordan on credit. Nava's testimony also indicates times when Flores 'fronted' cocaine to Jordan, which originated from Nava and his supplier. Although "to prove conspiracy, more evidence is required than a single sale, on credit, in a quantity consistent with personal consumption," *id.;* here, the multiple sales on credit coupled with Nava's knowledge that Jordan was reselling the cocaine—and not

6

consuming it for personal use—is "some evidence" distinguishing this matter from a buyer-seller relationship. It is not dispositive of a conspiracy, *id.* at 1002 (noting an inference of conspiracy resulting from "multiple, large-quantity purchases, on credit"), but it triggers the totality of circumstances approach, including the consideration of factors that would not, by themselves, distinguish a conspiracy.

There is additional evidence that, when considered in the light most favorable to the Government, satisfies the applicable standard of review: whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. First, Jordan purchased cocaine from Nava and/or Flores frequently for a period of approximately six months, a relationship that ended only because Nava was arrested in this case. Second, Nava had knowledge that Jordan was reselling the cocaine, putting them on the same side of the sale of cocaine to Jordan's customers. Third, Stonebraker was told by Nava that he could buy cocaine from Jordan if Nava was unavailable, indicating a shared interest in the distribution of cocaine. Fourth, on occasion, Flores would not sell all of his drugs and would give the drugs to Jordan to sell for him. Ultimately, when considered as a whole in the light most favorable to the Government, this evidence is sufficient to support a finding of conspiracy.

Next, Jordan asks that if the Court finds the existence of a conspiracy it should overturn the jury's finding that the conspiracy involved more than 500 grams of cocaine. In support, Jordan argues the Government failed to show that Jordan joined in any agreement with Stonebraker or Jose Diaz, who was Nava's dealer. Jordan argues that "because it is the cocaine associated [with these] two men that increases the amount in question to more than 500 grams, the jury's finding of that amount of cocaine should be overturned." Dkt. 2495 at 3. The Government failed to respond to this portion of Jordan's motion.

The evidence presented to the jury shows that Diaz supplied Nava with cocaine to resell. Nava then sold cocaine to Stonebraker and Jordan. Stonebraker distributed cocaine to members of the Outlaw Motorcycle Club and to Brian Peacock ("Peacock"), a buyer from Michigan. The parties stipulated that 105.33 grams of cocaine was seized from Peacock, 9.4247 grams of cocaine was seized from Nava, 340.05 grams of cocaine and 236.94 grams of cocaine was seized from Nava's home, and 371.87 grams of cocaine was seized from Diaz's place of employment. Jordan argues the cocaine seized from Peacock and Diaz's place of employment cannot be attributed to him because he was not in a conspiracy with Stonebraker or Diaz. It is unclear to the Court why Jordan argues that the Government could not establish an excess of 500 grams of cocaine without the cocaine seized from Peacock or Diaz's place of employment. The cocaine seized from Nava and his home total more than 500 grams alone. Therefore, there was sufficient evidence of a conspiracy between Jordan and Nava to distribute cocaine in an amount greater than 500 grams, and it is unnecessary to determine the scope of the conspiracy between Jordan, Stonebraker, and Diaz.

## IV. **CONCLUSION**

Great deference is given to jury verdicts. See *United States v. Love,* 706 F.3d 832, 837 (7th Cir. 2013). And, while evidence of conspiracy may be "thin," it is sufficient, when analyzing the evidence presented to the jury using the *Brown* considerations and viewing the evidence in the light most favorable to the Government. Accordingly, the Court finds sufficient evidence supports Jordan's conviction of Conspiracy to Distribute Cocaine in an amount greater than 500 grams. His Motion for Judgment of Acquittal (Dkt. 2495) as to Count 16 is **DENIED**.

**SO ORDERED.**

Date: 02/04/2014

*[signature]*
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Gregory P. Bowes
GREG BOWES LEGAL SERVICES, P.C.
greg@gregbowes.pro

Bradley A. Blackington
UNITED STATES ATTORNEY'S OFFICE
bradley.blackington@usdoj.gov

Doris Pryor
UNITED STATES ATTORNEY'S OFFICE
doris.pryor@usdoj.gov